IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COLLETTE A. LARA,

   Plaintiff,

v.              CV 10-333 RB/CG

CANDICE JAGER, INC. and
MANUEL EFREN AGUIRRE,

   Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court upon Plaintiff's *Application for Judgment for Failure to Comply with Settlement Agreement* ('Motion), (Doc. 35), Defendants' *Response to Application for Judgment for Failure to Comply with Settlement Agreement* ('Response'), (Doc. 36), and Plaintiff's *Reply to Response to Application for Judgment for Failure to Comply with Settlement Agreement* ('Reply'), (Doc. 37). The Court, having considered the pleadings, the applicable law, and otherwise being fully advised in the premises, **RECOMMENDS** that Plaintiff's Motion be **GRANTED IN PART AND DENIED IN PART**.

### I. Background

Plaintiff Collette Lara worked as a receptionist in the office of Candice Jager, Inc. ('CJI'), a New Mexico Corporation, from January 19, 2007, until July 20, 2007. (Doc. 35, Ex. 2 at 1). Ms. Lara claimed that Emanuelle Aguirre - a co-owner of CJI and Ms. Lara's supervisor - repeatedly touched her inappropriately. (Doc. 1, Ex. 1 at 3). This sexual harassment supposedly culminated with Mr. Aguirre slapping Ms. Lara's behind in June of 2007. (*Id*). Ms. Lara complained about the harassment in early July of 2007, and by the end

of the same month she had been fired. (*Id.*). Ms. Lara claims that she was fired in retaliation. (*Id.*). She filed charges of discrimination and retaliation against CJI with the Equal Employment Opportunity Commission ('EEOC') shortly thereafter. The EEOC determined that there was reasonable cause to believe that CJI had violated Title VII of the Civil Rights Act of 1964, and the EEOC eventually issued a Notice to Sue in February of 2010. (*Id.* at 3-4).

In March of 2010, Ms. Lara sued CJI and Mr. Aguirre in the First Judicial District in New Mexico. (Doc. 1 at 1). Ms. Lara asserted several claims including, *inter alia*, violations of the New Mexico Human Rights Act, Title VII of the Civil Rights Act of 1964, and state tort claims. (Doc. 1, Ex. 1). The defendants removed the case to the United States District Court for the District of New Mexico in April of 2010. (Doc. 1 at 1-2). The parties exchanged several rounds of discovery before participating in a settlement conference conducted by United States Magistrate Judge Carmen Garza in late July of 2010. The settlement conference was successful and the parties agreed to settle the case for eight thousand seven hundred and fifty dollars ($8,750.00). (Doc. 35, Ex. 2 at 1).

Following the settlement conference, counsel for the defendants drafted a 'Settlement Agreement and Mutual Release,' setting out the terms of the settlement reached by the parties. The settlement agreement sets out the parties' rights and responsibilities in separate sections. Section D(1)(A) through D(1)(F) provide that CJI will pay eight thousand seven hundred and fifty dollars ($8,750.00) to Ms. Lara. (*Id.*). The payments were to be made by CJI in three separate installments. (*Id.*). Notably, this section mentions only CJI as having a responsibility to pay Ms. Lara. (*Id.*). This section makes no mention of Mr. Aguirre. This section is contrast to the rest of the settlement agreement,

where the rights and responsibilities of all three parties are discussed individually. (*See, e.g.*, *Id.* at 2-3). For example, the settlement agreement contains a 'Mutual Release' clause in section D(2) where all three parties are mentioned and where all three parties released any potential claims or counterclaims they might have had against each other. (*Id.* at 2).

Ms. Lara signed the settlement agreement and moved to dismiss the case with prejudice. (Doc. 33). United States District Judge Robert Brack dismissed the case while noting that, as per the terms of the settlement agreement, the District Court retained jurisdiction over the case in the event of a missed payment. (Doc. 34; Doc. 35, Ex. 2 at 2-3). CJI properly made the first scheduled payment of $3,750.00, but failed to make any further payments. (Doc. 35 at 1-2; Doc. 36 at 1). Due to CJI's default, the remaining $5,000.00 is now due immediately. (Doc. 35, Ex. 2 at 2). The defendants do not dispute that CJI failed to make the second payment or that Ms. Lara is entitled to a judgment against CJI for failing to adhere to the terms of the agreement. (Doc. 36 at 1-2). The parties' sole dispute is whether Ms. Lara is entitled to a judgment against Mr. Aguirre as well for the remaining $5,000.00. (Doc. 35 at 2). The defendants claim that the plain language of the settlement agreement makes CJI solely liable in the event of non-payment. (Doc. 36 at 1). Ms. Lara claims that it was the intention of the parties for both defendants to be liable for the settlement amount. (Doc. 37 at 2-3).

## II.    Discussion

Whenever a Court is asked to adjudicate the rights and obligations of parties to a contract, the Court must first look to the plain language of the instrument itself. The Court's role in examining the instrument is to "ascertain the intentions of the contracting parties with

respect to the challenged terms at the time they executed the contract." Strata Prod. Co.
v. Mercury Exploration Co., 121 N.M. 622, 630 (1996). The Court is confined to
"interpreting the contract that the parties made for themselves, and absent any ambiguity,
the court may not alter or fabricate a new agreement for the parties." CC Housing Corp. v.
Ryder Truck Rental, Inc., 106 N.M. 577, 579 (1987).

There can be little doubt that the plain language of the settlement agreement states
that CJI, and not Mr. Aguirre, is responsible for making the required payments to Ms. Lara.
The agreement expressly provides in section D(1): "Payment to Lara: CJI will pay Lara the
total amount of eight thousand seven hundred and fifty dollars ($8,750.00) in three
payments as set forth in this paragraph." (Doc. 35, Ex. 2 at 1). Section D(1)(C) provides
that the last installment of $1,250.00 would be delivered "on or before January 26, 2011,
or *upon the closing of a sale of real property for which CJI receives a commission.*" (*Id.*)
(emphasis added). The agreement further requires that Ms. Lara's attorney's "shall provide
[their] taxpayers identification number to CJI's attorneys . . . prior to the date on which the
first payment is due."[1] Finally, the agreement provides in section D(1)(E) that "[i]f  CJI fails
to make a payment in the time and manner specified in this paragraph, then the entire
amount will be immediately due and payable . . . ." (*Id.*).

Nowhere in the language concerning the manner or timing of payments is Mr.
Aguirre's name mentioned. This stands in contrast to the language concerning the mutual
releases, where the settlement agreement explicitly states that both CJI and Mr. Aguirre
release Ms. Lara from any counterclaims they might have brought against her in the

---

[1] Although CJI and Mr. Aguirre are represented by the same law firm, the fact that the
language of the settlement agreement refers to "CJI's attorneys" when detailing the payment
scheme is telling.

underlying employment action: "CJI for itself, and Aguirre for himself . . . hereby release and forever discharge Lara . . . from any and all action, claims . . . existing as of the effective date of this agreement." (*Id.*). The agreement further distinguishes between CJI and Mr. Aguirre in section D(3)(5), where Ms. Lara agreed that the settlement was "in compromise of any claim which Lara may have or allege to have against CJI and Aguirre and [is] not to be construed as an admission of liability on the part of any party or parties hereby released . . ." (*Id.* at 3). Clearly, the drafters of the settlement agreement did not consider CJI and Mr. Aguirre to be the same entity and the language of the agreement shows that the drafters took care to distinguish between the respective rights and obligations of CJI and Mr. Aguirre.

Ms. Lara contends that the language of the agreement regarding the payment schedule and obligations is ambiguous. She believes that the Court should enter a judgment against both CJI and Mr. Aguirre since, at the time she signed the agreement, it was her intention that both defendants be liable in the event of a non-payment. The question of whether a contract contains an ambiguity is a matter of law to be decided by the court. Levenson v. Mobley, 106 N.M. 399, 401 (1987). A contract is ambiguous if it is "reasonably and fairly susceptible of different constructions." Sanchez v. Borrego, 135 N.M. 192, 194 (2004). Further, "the language at issue should be considered not from the viewpoint of a lawyer, . . . but from the standpoint of a reasonably intelligent lay[person], viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, prior to and contemporaneous with the making of the [contract]." Rummel v. Lexington Ins. Co., 123 N.M. 752, 758 (1997) (quotation omitted).

This Court finds that, as a matter of law, the terms of the settlement agreement were not ambiguous. The terms of sections D(1)(A) through D(1)(E), which lay out the payment scheme, are not susceptible to different constructions. The language explicitly states that CJI is responsible for making the agreed-upon payments, and that the entire unpaid amount will be due only if CJI fails to make the payments. When deciding whether a contract's terms are ambiguous, courts are reminded that "the language of the entire agreement should be construed together." Allsup's Convenience Stores, Inc. v. North River Ins. Co., 127 N.M. 1, 12 (1999).  A review of the entire document highlights the difference between the section relating to payments - which refers solely to CJI - versus the other sections of the agreement, where the rights and responsibilities of CJI and Mr. Aguirre are addressed individually and separately.  Indeed, the sections regarding payment stands apart from all other sections of the agreement in that the payment sections are the only ones which omit any mention of Mr. Aguirre.

It is true that "in determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 508-09 (1991). However, Ms. Lara has not presented any evidence regarding the circumstances surrounding the making of the agreement or about her course of dealing with the defendants which would suggest that the settlement agreement is ambiguous. Ms. Lara's sole argument is that "[p]laintiff never envisioned that judgment would only be entered against CJI in the event of a default and would not have agreed to that term had it been explicitly placed in the agreement." (Doc. 37 at 2). While that may have been Ms. Lara's

intention, "[a]s a matter of law, one party's subjective impressions, innermost thoughts, or private intentions, do not create an ambiguity." Hoggard v. Carlsbad, 121 N.M. 166, 170 (1995); Crawford Chevrolet, Inc. v. National Hole-in-One Ass'n, 113 N.M. 519, 522 n.3 (1992).

### III.    Recommendation

Because the settlement agreement is not ambiguous, **IT IS HEREBY RECOMMENDED** that Plaintiff Collette Lara's *Application for Judgment for Failure to Comply with Settlement Agreement* be **GRANTED IN PART AND DENIED IN PART**. The Court **RECOMMENDS** that judgment be entered against CJI for $5,000 in favor of Collette Lara.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE